UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 370, | Case No. 4:15-CV-00500-EJL-CWD |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| LAWRENCE G. WASDEN, in his official capacity as Attorney General for the State of Idaho, | |
| Defendant. | |

Pending before the Court is Defendant State Attorney General Lawrence Wasden's Motion to Dismiss First Amended Complaint (Dkt. 16.)  The parties have submitted their briefing on the motion and the matter is now ripe for the Court's review. Having fully reviewed the record herein, the Court finds the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds the decisional process would not significantly aided by oral argument, the pending motion will be decided on the record and without oral argument.

## BACKGROUND

Plaintiff, the International Union of Operating Engineers Local 370 ("Local 370" or "Union"), is a labor organization that represents workers in Idaho, including approximately 400 workers at MotivePower, a locomotive manufacturer in Boise, Idaho. (Dkt. 14.)  Local 370 has a duty to represent all workers in a bargaining unit, even those who are not Union members.  Although Local 370's representational work benefits all bargaining unit employees, it is paid for entirely by those workers who choose to be Union members.  The Union members—who make up approximately 32 percent of the MotivePower bargaining unit—pay monthly dues of 2.5 times their hourly wage, while nonmembers—the other 68 percent—pay nothing.

In an attempt to resolve this issue, Local 370 negotiated with MotivePower to enter into a Fair Representation Fee Agreement, which would require all bargaining unit employees to pay a service fee to cover a portion of the cost of the Union's representation.  Local 370 proposed a service fee of less than 50 percent of Union dues. MotivePower rejected Local 370's proposal on the grounds that the proposed agreement violated Idaho's right to work law, Idaho Code § 44-2003(3).

The aforementioned provision of Idaho's right to work law prohibits any person from being "required, as a condition of employment or continuation of employment,… to pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization."  *Id*.  Local 370 believes Idaho Code § 44-2003(3) is preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 to 169.  Local 370 also

MEMORANDUM DECISION AND ORDER - 2

contends the Idaho law's prohibition constitutes an unconstitutional taking without just compensation in violation of the Fifth Amendment to the United States Constitution.

On October 22, 2015, Local 370 filed this action against the Attorney General for the State of Idaho, Lawrence Wasden (hereinafter "Defendant"), to invalidate the Idaho law.  (Dkt. 1) (seeking a declaration that § 44-2003(3) is preempted by the NLRA and is unconstitutional).  Defendant filed a Motion to Dismiss Plaintiff's initial Complaint on November 17, 2015 (Dkt. 11).  Prior to responding, Plaintiff filed a First Amended Complaint ("FAC") on December 14, 2015 (Dkt. 14).  Defendant then filed an amended Motion to Dismiss the FAC on December 17, 2015 (Dkt. 16).[1]  Defendant's Motion to Dismiss FAC was fully briefed by February 26, 2016.  (Dkt. 26.)

Local 370 filed a Notice of Supplemental Authority (Dkt. 27) on April 11, 2016, to which Defendant responded (Dkt. 28.)  Upon obtaining this Court's permission, the National Right to Work Legal Defense and Education Foundation, Inc. thereafter filed an amicus brief in support of Defendant's amended Motion to Dismiss (Dkt. 40).  Finally, Defendant filed a Second Notice of Supplemental Authority (Dkt. 41) on October 4, 2016, to which Local 370 responded (Dkt. 42) on October 5, 2016.  Having considered the briefing by the parties and amici, the Court will grant Defendant's Motion to Dismiss FAC.

---

[1] Because Defendant's initial Motion to Dismiss was aimed toward the Complaint, which has since been replaced by the FAC, the Court will deny the initial Motion to Dismiss (Dkt. 11) as moot.

MEMORANDUM DECISION AND ORDER - 3

## STANDARD OF REVIEW

Defendant seeks to dismiss Local 370's FAC under Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(1).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir.2003).  All allegations of material fact are taken as true, and must be construed in the light most favorable to the plaintiff.  *Id.* at 1200 (citation omitted).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  Review is generally limited to the contents of the complaint and documents attached thereto.  *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995).  However, the court also may consider a matter that is properly the subject of judicial notice without converting a motion to dismiss into one for summary judgment.  *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir.2001).

A challenge to subject matter jurisdiction under Rule 12(b)(1) "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint."  *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039–40 n. 2 (9th Cir.2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

MEMORANDUM DECISION AND ORDER - 4

2000).  In a facial attack on the court's subject matter jurisdiction, the defendant challenges the sufficiency of the allegations of subject matter jurisdiction in the complaint.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  The standard of review is akin to the Rule 12(b)(6) standard.  That is, all allegations of the complaint are taken as true and all disputed issues of fact are resolved in favor of the plaintiff.  *Id*.  In a factual challenge under Rule 12(b)(1), "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004) (court may review evidence beyond complaint without converting Rule 12(b)(1) motion into one for summary judgment).  Where, as here, a factual challenge is raised, the court may resolve disputed issues of fact if they do not depend upon resolution of factual issues going to the merits.  *Leite v. Crane Co*., 749 F.3d 1117, 1121-22 (9th Cir. 2014.)

## ANALYSIS

Defendant moves to dismiss the FAC on three grounds: (1) that the Court lacks subject matter jurisdiction over Local 370's claims; (2) that Local 370's preemption and takings claims are barred by the applicable statute of limitations; and (3) that both claims fail to state a basis upon which relief may be granted.  The Court must address the jurisdictional issue before it considers the merits of the case.  *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction

MEMORANDUM DECISION AND ORDER - 5

be established as a threshold matter… is inflexible and without exception.") (internal

citation and quotation marks omitted).  Before doing so, however, a brief review of the

legislation in question is necessary.

### 1.  The National Labor Relations Act, 29 U.S.C. § 151 et. seq.

The National Labor Relations Act ("NLRA") was enacted by Congress in 1935.

Pub.L. 74-189, 49 Stat. 449 (1935).  Broadly, the NLRA (also known as the Wagner Act)

set forth a national labor policy and created the National Labor Relations Board

("NLRB") to implement it.  *Michigan v. State AFL-CIO v. Callaghan*, 15 F.Supp.3d 712,

715 (E.D. Mich. 2014) (citing *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 22-

24 (1937)).  The NLRA said little about the respective role of the state and federal

governments in regulating labor practices.  *Bethlehem Steel Co. v. New York State Labor*

*Relations Bd.*, 330 U.S. 767, 771 (1947) ("Congress has not seen fit to lay down even the

most general of guides to the construction of [the NLRA], as it sometimes does, by

saying that its regulation either shall or shall not exclude state action.")

After World War II, "there was a feeling by some in Congress that the pendulum

had swung too far in the direction of unionization.  In particular, closed-shop agreements,

under which an employer agreed to hire union members only, were thought by some

members of Congress to be a powerful tool that union leaders were abusing."  *Sweeney v.*

*Pence*, 767 F.3d 654, 681 (7th Cir. 2014) (Wood, J., dissenting.)  In response, Congress

amended the NLRA with the Taft-Hartley Act. Pub. L. 80-101, 61 Stat. 136 (1947).  The

amendments outlawed the closed-shop.  *N.L.R.B. v. Local Union No. 55*, 218 F.2d 226,

232 (10th Cir. 1954) (recognizing amendments made closed-shop agreements illegal).

MEMORANDUM DECISION AND ORDER - 6

The Taft-Hartley Act did not, however, outlaw the "union shop," or a workplace where the employer is free to hire anyone, but can require new employees to join the union after they are hired. *International Union of the Plumbing and Pipefitting Indus. v. N.L.R.B.*, 675 F.2d 1257, 1267-68 (D.C. Cir. 1982) (Mikva, J. dissenting).  Instead, "Congress added provisions making it more difficult for workers to obtain a union shop, but retained the union shop as a mandatory subject of bargaining in section 8(a)." *Id.* at 1272.  In relevant part, Section 8(a)(3) of the NLRA now provides:

> It shall be an unfair labor practice for an employer… by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage *membership* in any labor organization… [p]rovided, [t]hat nothing in this subchapter… shall preclude an employer from making an agreement with a labor organization… to require as a condition of employment *membership* therein…[.]

29 U.S.C. § 158(a)(3) (emphasis added).

Congress also clarified the role of state and federal officials in regulating labor practices by adding Section 14(b) to the NLRA.  Section 14(b) provides:

> Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring *membership* in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

29 U.S.C. § 164(b) (emphasis added).

Under Section 14(b), states are free to pass laws prohibiting employers from requiring "membership" in a labor organization as a condition of employment.  Local 370 argues Idaho Code § 44-2003(3) goes much further than Section 14(b) permits by

MEMORANDUM DECISION AND ORDER - 7

prohibiting mandatory "fees … of any kind or amount."[2]  (Dkt. 21, p. 14).  Local 370 contends Idaho law "thus prohibits an agreement that requires all workers simply to pay for representation of their own bargaining unit (and not for any political, institutional, or non-representational expenses)."[3]  (*Id.*)  Defendant counters the Supreme Court has determined union "membership" is synonymous with paying a portion of the dues connected to a union's collective bargaining.  (Dkt. 16-1, p. 15).  Thus, Defendant suggests Idaho's right to work law is explicitly authorized under Section 14(b).  The Court will address such arguments after first ensuring it has subject matter jurisdiction over this dispute.

### 2.  Subject Matter Jurisdiction

It is a "fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  A federal court is presumed to lack jurisdiction unless the contrary affirmatively appears.  *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).  The plaintiff bears the burden

---

[2] Local 370 does not challenge Idaho Code § 44-2003(2), which prohibits agreements requiring employees "to become, or remain a member of a labor organization," as this is "exactly the prohibition authorized by Section 14(b)."  (Dkt. 21, p. 21) (citing *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Ch. of Assoc. Builders & Contractors, Inc*., 801 F.3d 950, 958 (9th Cir. 2015)).

[3] "While Section 8(3) permits union security agreements in which all employees must become union 'members' as a condition of continued employment, at the same time, 'dues-paying nonmember employees' may not be compelled to fund 'activities unrelated to collective bargaining, contract administration, or grievance adjustment….'" *Internal Union of Operating Engineers Local 139 v. Schimel*, 2016 WL 5376197, at *4 (E.D. Wisc. 2016) (quoting *Comm'ns Workers of Am. v. Beck*, 487 U.S. 735, 738 (1988)).

of establishing the existence of subject matter jurisdiction.  *Thornhill Pu. Co., Inc. v. Gen. Tel. & Elec., Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  Defendant contends subject matter jurisdiction is lacking in this case because Local 370 lacks standing and because the NLRB has primary jurisdiction over the Union's preemption claim.

      *a.  Standing*

      In order to bring suit in a federal court, a plaintiff must establish standing under the "case or controversy" requirement of Article III to the U.S. Constitution.  *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403, 407 (1972).  Standing is an essential element of federal-court subject matter jurisdiction.  *South Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980).  The "irreducible constitutional minimum of standing" consists of three general requirements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the plaintiff must "clearly demonstrate that he has suffered an 'injury in fact.'"  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  An "injury in fact" must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560-61.  Second, the plaintiff must show the injury can be traced to the challenged action of the defendant, and is "not an injury that results from the independent action of some third party not before the court."  *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).  Third, the plaintiff must show the injury is "likely," as opposed to merely speculatively, "to be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560.  The redressability prong cannot be fulfilled if, "following a favorable decision, whether the injury would be redressed would still depend on the 'unfettered choices made by

MEMORANDUM DECISION AND ORDER - 9

independent actors not before the courts.'"  *Novak v. United States*, 795 F.3d 1012, 1020

(9th Cir. 2015) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989)).

Defendant argues Local 370 cannot establish redressability because the NLRA

controls the Union's collective bargaining relationship with Idaho employers.  Under

Section 8(a)(5) of the NLRA, employers must negotiate in good faith only over

mandatory bargaining subjects, including wages, hours, and other terms and conditions of

employment.  29 U.S.C. § 158(a)(5); *N.L.R.B. v. Wooster Div. of Borg-Warner Corp.*,

356 U.S. 342, 349 (1958).  "As to other matters, however, each party is free to bargain or

not to bargain, and to agree or not to agree."  *Wooster*, 356 U.S. at 349.  Where a state

passes a right to work law pursuant to NLRA Section 14(b), that law converts union

security into a "non-mandatory" subject of bargaining.  *Plumbers, Local 141*, 252

N.L.R.B. 1299, 1299 n. 1 (1980).  Defendant suggests MotivePower (and other Idaho

employers the Union bargains with) could thus choose not to negotiate with Local 370

regarding a service fee agreement, regardless of whether this Court invalidates Idaho

Code § 44-2003(3).

Local 370 counters that it has standing for three independently sufficient reasons.

First, Idaho's right to work statute "makes it illegal for a union to 'strike, picket[],

boycott,' or take 'other action' to induc[e] or attempt[] to induce an employer to enter

into" an agreement prohibited by Idaho's right to work law."  (Dkt. 21, p. 6) (citing I.C.

§ 44-2005).  Violators are subject to criminal and civil penalties.  I.C. §§ 44-2007, 2008.

Absent Idaho Code § 44-2003(3), Local 370 argues it would take otherwise prohibited

actions to attempt to obtain a service fee agreement.  For instance, Local 370's Business

MEMORANDUM DECISION AND ORDER - 10

Manager Curt Koegen states in a sworn affidavit that, in states without right to work laws, such as Washington, Local 370 has been able to obtain a union security clause in every one of its Collective Bargaining Agreements.  (Dkt. 21-1, ¶ 24.)  If not for Idaho Code § 44-2003(3), Local 370 suggests it could strike or take other necessary actions to secure a service fee agreement with MotivePower and other Idaho employers.  (*Id*., ¶ 25.)  Because a plaintiff may "establish standing by alleging that they have 'modified [their] behavior' as a result of the" law, Union 370 argues it has established standing.  (Dkt. 21, p. 6) (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009)).

Next, Local 370 states Idaho Code § 44-2003(3) not only deprives it of the opportunity to bargain over a service fee agreement with Idaho employers, but also takes one of its bargaining chips off the table.  (Dkt. 21, p. 6.)  If the service fee agreement were not "strictly off the table, Idaho employers would have to bargain over it in good faith," as "Union security is ordinarily a mandatory subject of bargaining."  (*Id*., p. 7, n. 2) (citing *N.L.R.B. v. Gen. Motors Corp*., 373 U.S. 734, 745 (1963)). The Ninth Circuit has observed, "framing a subject as mandatory or permissive" or illegal "has significant consequences for the parties' bargaining obligations" and is "'crucial in labor disputes, because it determines to what extent one party may compel the other to bargain over a given proposal.'"  *Retlaw Broad Co. v. N.L.R.B*., 172 F.3d 660, 666 (9th Cir. 1999) (citation omitted).  Local 370 contends a Court order striking down Idaho Code § 44-2003(3) would redress the injury to its bargaining power, regardless of whether the Union

would ultimately obtain a service fee agreement or trade off that bargaining chip in favor of other concessions by Idaho employers.  (Dkt. 21, p. 7.)

Third, Local 370 presents evidence to show that it would likely succeed in obtaining service fee agreement with an Idaho employer if not for the challenged law. For instance, Wabtec Corporation, the parent company of MotivePower, has agreed to union security clauses in its Collective Bargaining Agreements in states without a right to work law.  (Dkt. 21-2, ¶ 3.)  Local 370 asserts such agreement is not unusual because, where not prohibited by law, employers almost universally agree in bargaining to union security or service fee clauses.  (Dkt. 21, p. 7; Dkt 21-2, ¶ 4.)

The Court agrees that Local 370 has alleged facts sufficient to establish it has "modified its behavior" as a result of a challenged law, and that it thus has standing to challenge Idaho Code § 44-2003(3).  *Long Beach*, 574 F.3d at 1019.  Absent this provision, Local 370 could attempt to bargain with Idaho employers to obtain a service fee agreement, and could strike or take other action if such negotiation proved unsuccessful.  Whether Local 370 would ultimately succeed is beside the point, as Idaho Code § 44-2003(3) prevents it from trying.

Defendant suggests Local 370 still lacks standing even if this Court finds Idaho Code § 44-2003(3) is invalid since no Idaho employer would enter into a service fee agreement because employers would fear liability from the NLRB.  The NLRB has a "non-acquiescence" policy to charging fees to nonmembers for the performance of representational duties in states that prohibit such payments in Section 14(b)-authorized laws.  (Dkt. 16-1, p. 7, n. 1) (collecting cases).  Defendant notes:

MEMORANDUM DECISION AND ORDER - 12

> It has been the Board's consistent policy for itself to determine whether to acquiesce in the contrary views of a circuit court of appeals or whether, with due deference to the court's opinion, to adhere to its previous holding until the Supreme Court of the United States has ruled otherwise.  But it is not for a Trial Examiner to speculate as to what course the Board should follow where a circuit court has expressed disagreement with its views.  On the contrary, it remains the Trial Examiner's duty to apply established Board precedent which the Board or the Supreme Court has not reversed.

(Dkt. 16-1, pp. 7-8) (quoting *Ins. Agents (Prudential Ins. Co.)*, 119 N.L.R.B. 768, 773 (1957).

Defendant contends the NLRB has held it to be an unfair labor practice to enter into a service fee agreement where state law prohibits such agreements, suggests that even if this Court invalidates Idaho's law, the NLRB would not "acquiesce" to that ruling, and argues Idaho employers would be so afraid of non-acquiescence by the NLRB that no employer would agree to enter into an agreement with the Union even without Idaho Code § 44-2003(3).  (Dkt. 16-1, pp. 6-8.)

The Court rejects Defendant's arguments.  The Ninth Circuit has described the NLRB's "non-acquiescence" policy as "unacceptable," noting "[a]dministrative agencies are not free to refuse to follow circuit precedent in cases originating within the circuit, unless the Board has a good faith intention of seeking review of the particular proceeding by the Supreme Court…."  *N.L.R.B. v. Ashkenazy Prop. Mgmt. Corp*., 817 F.2d 74, 75 (9th Cir. 1987).  Further, the NLRB "has no authority to compel compliance [with its orders] or punish noncompliance;" it must apply to federal courts of appeals to enforce its orders.  2 J. Higgins, *The Developing Labor Law* 2990 (6th ed. 2012); 28 U.S.C. § 160(e).  If this Court concludes that Idaho law is invalid and the Ninth Circuit agrees, then courts within the Ninth Circuit would not enforce an NLRB decision that instead

MEMORANDUM DECISION AND ORDER - 13

validates the law. *Allegheny Gen. Hosp. v. N.L.R.B.*, 608 F.2d 965, 970 (3d Cir. 1979)

("[A] disagreement by the NLRB with a decision of th[e] [federal] court is simply an

academic exercise that possesses no authoritative effect…. Such an order will not be

enforced."), *abrogated on other grounds* by *St. Margaret Mem'l Hosp. v. N.L.R.B*, 991

F.2d 1146, 1155 (3d Cir. 1993).

As Local 370 suggests, its "perfect track record of obtaining service fee

agreements in states without laws like Idaho Code § 44-2003(3)" is sufficient to

demonstrate that it is "'likely'… that [the Union's] injury will be 'redressed by a

favorable decision'" by this Court. (Dkt. 21, p. 9) (quoting *Lujan*, 504 U.S. at 561).

Local 370 "need not demonstrate that there is a 'guarantee' that [its] injuries will be

redressed by a favorable decision." *Novak*, 795 F.3d at 1019-1020 (citation omitted).

Because the Court finds there is sufficient likelihood that a change in the law would

allow Local 370 to negotiate service fee agreements with Idaho employers, the Court

finds Local 370 has standing to assert its claims. *Id.* (redressability is established where

there would be a "change in legal status" as a consequence of a favorable decision where

the "practical consequence of that change would amount to a significant increase in the

likelihood that the plaintiff would obtain relief that redresses the injury suffered.)

   b.  *NLRB Jurisdiction*

Defendant next argues subject matter jurisdiction is lacking because the NLRB has

primary jurisdiction over the instant dispute. (Dkt. 16-1, pp. 9-10) (citing *San Diego

Bldg. Trades Council v. Garmon*, 359 U.S. 236, 242 (1959) ("the unifying consideration

of our decisions has been regard to the fact that Congress has entrusted administration of

MEMORANDUM DECISION AND ORDER - 14

the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience.") Defendant then cites a number of cases where the NLRB was found to have primary jurisdiction over a labor dispute.  (Dkt. 16-1, pp. 10-11.)

Defendant is correct the NLRB has primary jurisdiction over disputes between union employers and employees.  However, this case is not a dispute between MotivePower and Local 370.  MotivePower is not a party to this case, and Local 370 is not seeking relief from any Idaho employer.  Instead, Local 370 seeks an injunction to prevent Defendant, the Idaho Attorney General, from enforcing Idaho Code § 44-2003(3), including by way of criminal prosecution.  The Attorney General is not an "employer" under the NLRA and could not be made a party to a proceeding before the NLRB.  29 U.S.C. § 152(2).

Significantly, the NLRB itself has acknowledged the federal courts are the proper forum for suits seeking to enjoin state officials from enforcing state law.  For instance, in *In re Independent Residences, Inc*., 355 N.L.R.B. 724 (2010), the NLRB declined an employer's request to declare a New York law preempted by the NLRA, deferring instead to pending federal court litigation.  *Id*. at 730.  In so holding, the NLRB explained:

> [T]he Board lacks authority to enforce its views concerning the validity of [the New York law].  Thus, even if we were to opine here that [the New York law] is preempted, we could not assure any party that the law would not, nevertheless be enforced against them.  The state law would remain in effect, *unless and until it is invalidated, or its enforcement enjoined, by a Federal or state court with jurisdiction over the question and authority to issue orders binding on the state*.

MEMORANDUM DECISION AND ORDER - 15

*Id*. (emphasis added).

Contrary to Defendant's arguments, this case "involves a quintessential federal question: whether a state law is preempted by operation of the NLRA and the Supremacy clause." *N.L.R.B. v. Arizona*, 2012 WL 3848400, at *2 (D. Ariz., 2012); *see also Local 926, Int'l Union of Op. Eng'rs, AFL-CIO v. Jones*, 460 U.S. 669, 675-76 (1983) (federal courts are "often asked to determine whether particular state … regulations may coexist with the … NLRA.").

Finally, Defendant suggests the Supreme Court's decision in *Sears, Roebuck and Co. v. San Diego Cnty. Dist. of Council of Carpenters*, 436 U.S. 180 (1982) requires the Court to find the NLRB has primary jurisdiction over this dispute.  (Dkt. 16-1, p. 11.)  In *Sears*, the Court explained "the critical inquiry" when determining whether a case falls within the NLRB's primary jurisdiction is "whether the controversy. . . is identical to. . . or different from. . . that which could have been, but was not, presented to the Labor Board." *Sears*, 436 U.S. at 197.  The *Sears* Court held it is in "only the former situation"—where a dispute is identical to a case that could have been brought before the Labor Board—that a "court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board." *Id*.  Because the controversy which Local 370 might have presented to the NLRB is not the same as the controversy presented to this Court, the NLRB does not have primary jurisdiction.  *Id*. Specifically, if Local 370 were to file an NLRB charge against an Idaho employer for failing to bargain over the Union's service fee proposal, that proceeding would involve different parties (the employer rather than the Attorney General), different factual

MEMORANDUM DECISION AND ORDER - 16

determinations (regarding the parties' conduct in bargaining), and different remedies. The Court finds the NLRB does not have primary jurisdiction over Local 370's claim.

### 3.  Statute of Limitations

Defendant next suggests Local 370's was required to sue in 1985, the date when Idaho Code § 44-2003(3) first took effect.  However, the FAC alleges § 44-2003(3) is unconstitutional (as applied to agreements seeking compensation for representational services) and causes a continuous injury to Local 370.  (Dkt. 21, p. 11.)  Where an unconstitutional law causes ongoing harm, the "continuous enforcement of [the] unconstitutional statute cannot be insulated by the statute of limitations."  *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) (citations omitted); *Brown v. Bd. of Educ. of Topeka, Kan*., 347 U.S. 483, 486-88 (1954) (permitting plaintiffs to challenge the ongoing violation of their equal protection rights under state laws that had existed for decades).  The Court finds Local 370's claims are timely.

### 4.  Federal Preemption

Having rejected Defendant's arguments regarding subject matter jurisdiction and the statute of limitations, the Court may turn to the merits of Local 370's case.  In the FAC, Local 370 argues Idaho Code § 44-2003(3)'s prohibition on voluntary agreements requiring an employee, as a condition of employment, to pay "dues, fees, assessments, or other charges" to a labor organization covered by the NLRA is preempted by the NLRA, and, as such, violates 42 U.S.C. § 1983.  (Dkt. 14, ¶¶ 55-57.)  Specifically, Local 370 suggests Section 8(a)(3) of the NLRA expressly permits a union and an employer to enter into an agreement (such as the fee service agreement Local 370 seeks) that requires all

MEMORANDUM DECISION AND ORDER - 17

employees, regardless of union membership, to pay a fee that covers the cost of the union's representation.  29 U.S.C. § 158(a)(3).  Local 370 argues "[c]ontrary to Section 8(a)(3), Idaho Code § 44-2003(3) criminalizes any such agreement.  Idaho's law is therefore preempted unless it fits within an exemption from NLRA preemption."  (Dkt. 21, p. 14.)

Defendant counters that Section 14(b) of the NLRA provides such exemption by authorizing states to outlaw agreements requiring employees to obtain "membership" in a labor union as a condition of employment.  (Dkt. 16-1, pp. 14-16.)  As mentioned, Section 14(b) of the NLRA provides:

> Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

29 U.S.C. § 164(b).

Local 370 contends Section 14(b) permits states to ban only union-security agreements requiring "actual membership," or else compelling workers to pay a full membership fee that serves as the functional equivalent of membership.  (Dkt. 21, p. 15.) Local 370 suggests the Idaho statute goes further by prohibiting unions from collecting any fees and dues from unwilling employees.  Local 370 argues Idaho Code § 44-2003(3) goes too far because employees may still be required to pay a fee equal to their fair share of collective bargaining costs—something less than the full membership fee—and not qualify as "members" of the union under Section 14(b).  Under Local 370's rational, Section 8(a)(3), which expressly permits such arrangements, would then apply and

MEMORANDUM DECISION AND ORDER - 18

preempt any state statute barring a service fee agreement between the Union and Idaho employers.

Local 370 further argues that such reading of Section 14(b) and Section 8(a)(3) is appropriate because unions are required to act on behalf of all employees in labor disputes, and may not discriminate against non-members. *See, e.g., Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 556 (1991) (A union must affirmatively seek to further the interests of its nonmembers; it cannot… "negotiate particularly high wage increases for its members in exchange for accepting no increases for others."). Local 370 suggests compelling the Union to represent all workers equally using dues contributed only by some workers creates a classic free-rider problem. (Dkt. 21, pp. 3-6.)

Although, as Local 370 highlights, the validity of Idaho Code § 44-2003(3) is an open question in the Ninth Circuit, two federal circuits have upheld similar state laws and rejected the precise arguments Local 370 asserts here. *See Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014); *Int'l Union of Plumbing and Pipefitting*, 675 F.2d at 1262. Apart from the dissents in the two aforementioned cases, decades of consistent Supreme Court, federal court, state court, and agency precedent has held Section 14(b) allows states to ban compulsory union fees. *See, e.g., Retail Clerks Intern. Ass'n, Local 1625 v. Schermerhorn*, 373 U.S. 746, 751 (1963) ("*Retail Clerks I*") ("the agreements requiring 'membership' in a labor union which are expressly permitted [under Section 8(a)(3)] are the same 'membership' agreements expressly placed within the reach of state law by § 14(b)."); *Retail Clerks Intern Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 102 (1963) ("*Retail Clerks II*") ("even if [a] union-security agreement clears all federal

hurdles, the states by reason of § 14(b) have the final say and may outlaw it.");

*Amalgamated Ass'n of St. Elec. Ry. And Motor Coach Emps. v. Las Vegas-Tonopah-Reno Stage Line, Inc.*, 319 F.2d 783, 786-87 (9th Cir. 1963) (Nevada had power to outlaw collective bargaining agreement requiring that, as a condition of continued employment, non-union employee pay dues to union); *Mich. State AFL-CIO v. Callaghan*, 15 F.Supp.3d 712, 720 (E.D. Mich. 2014) (dismissing union's claim that the NLRA preempted Michigan statute forbidding conditions of employment that require an individual to pay "dues, fees, assessment, or other charges or expenses *of any kind or amount*" because such laws are a valid exercise of state regulatory power under Section 14(b)) (emphasis added); *Fla. Educ. Ass'n v. Pub. Emp. Relations Comm'n*, 346 So. 2d 551, 552 (Fla. Ct. App. 1977) (proposed fair-share rule requiring non-union public employees to pay the union a pro rata share of bargaining costs as a condition of employment would violate Florida law); *Indep. Guard Ass'n Local No. 1 v. Wackenhut Serv., Inc.*, 522 P.2d 1010, 1014 (Nev. 1974) (union security arrangement requiring payment of union dues by non-members as a condition of employment violated Nevada right to work law); *Hughes Tool Co.*, 104 N.L.R.B. 318, 329 (1953) ("We do not believe… [Union] may require a fee from nonmember employees for services which are due the latter as a matter of right."); *Am. Postal Workers Union (Postal Serv.)*, 277 N.L.R.B. 541, 543 (1985) ("A union, which is the exclusive bargaining representative of all employees in the unit, must represent all members of the bargaining unit and diligently pursue their meritorious grievances whether those employees are dues-paying members of the Union or not.")  In light of such long-standing precedent, the Court

MEMORANDUM DECISION AND ORDER - 20

declines Local 370's invitation to instead adopt the reasoning set forth in two outlying dissents.

Further, twelve states had right to work laws in effect when Taft-Hartley was passed in 1947. *Sweeney*, 767 F.3d at 662. Of these twelve, seven explicitly prohibited the payment of dues or other monies to a union as a condition of employment. *Id.*; *see also Int'l Union of Plumbing and Pipefitting,* 675 F.2d at 1260 ("Congress knew precisely what state laws it was validating when it passed § 14(b)… the House report listed each state which had passed a right to work law or constitutional provision."); Retail Clerks II, 375 U.S. at 100 (Congress was "well-informed" about existing state right to work laws when passing the Taft-Hartley Act). The stated purpose of Section 14(b) "was to preserve the efficacy of laws like these—statutes that allowed states to place restrictions of their choosing on union-security agreements, including restrictions on whether employees could be compelled to pay dues or fees of any kind to a union."[4] *Sweeney*, 767 F.3d at 663; *see also Int'l Union of Plumbing and Pipefitting*, 675 F.2d at 1261 ("Congress knew of the free rider problem; it knew of the state laws at issue here; it passed section 14(b) anyway.").

Moreover, twenty-six states have some form of a right to work law today. (Dkt. 40, p. 24.) Each of these laws expressly or implicitly prohibit compulsory union fees.

---

[4] Local 370's position would instead mean that Congress did not intend Section 14(b)'s protections to extend to the majority of right to work statutes then in effect. In the absence of any indication of this in the statute, this is not a reasonable interpretation.

*Sweeney*, 767 F.3d at 663; *International Union of Operating Engineers Local 139 v. Schimel*, 2016 WL 5376197 (E.D. Wis. 2016).  Passed between 1947 and 2016, the "overwhelming majority" of these jurisdictions—nineteen—have language substantially identical to the language in Idaho Code § 44-2003(3).[5]  *Sweeney*, 767 F.3d at 663.  As the *Sweeney* Court noted, the "longevity" of many of these statutes, "coupled with the lack of disapproval expressed by the Supreme Court, suggests" that Idaho's right to work law "falls squarely within the realm of acceptable law."  *Id*.

The *Sweeney* Court also rejected the "free-rider" argument Local 370 sets forth, holding:

> Congress explicitly permitted states that did restrict [union security agreements] to find their own solution to the free-rider problem, if it was a problem in those states.  Indeed, unions continue to thrive and assert significant influence in several right to work states, including Iowa, where provisions equivalent to Indiana's have been effect for more than sixty-five years.  If the Plaintiff-Appellants believe that Indiana's law will create a new or unexpectedly severe free-rider problem, they may address those views to Congress.

*Id*. at 664-665.

Local 370's arguments are similarly better addressed to the legislature, rather than to this Court.

---

[5] *See* Ala. Code § 25–7–34 (1953); Ark. Code Ann. § 11–3–303 (1947); Ga. Code Ann. § 34–6–22 (1947); Idaho Code Ann. § 44–2003(3) (1985); 22 Guam Code Ann. § 4103(3) (2000); Iowa Code § 731.4 (transferred 1977); La. Rev. Stat. Ann. § 23:983 (1976); Mich. Comp. Laws § 423.17 (2013); Miss. Const. art. 7, § 198–A (1960); Neb. Rev. Stat. § 48–217 (1947); N.C. Gen. Stat. § 95–82 (1947); Okla. Const. art. 23, § 1A (2001); S.C. Code Ann. § 41–7–30 (1954); Tenn. Code Ann. § 50–1–203 (1947); Tex. Lab. Code Ann. § 101.004 (1993); Utah Code Ann. § 34–34–10 (1955); Va. Code Ann. § 40.1–62 (1947); Wyo. Stat. Ann. § 27–7–111 (1963); Wis. Stat. § 111.04 (Supp. 2016 (enacted Mar. 9, 2015); *see also* N.D. Cent. Code § 34–01–14.1 (1987), *repealed by N.L.R.B. v. North Dakota*, 504 F.Supp.2d 750 (D.N.D. 2007).

Finally, Local 370 argues under the language of Section 14(b) and Supreme Court case law, states can prohibit agreements that require actual union membership (the "union shop"), and can prohibit agreements that require nonmembers to pay the same union dues as those paid by members because such requirement is "the practical equivalent of" union membership.  (Dkt. 21, p. 16) (citing *N.L.R.B v. General Motors*, 373 U.S. 734, 745 (1963)).  However, as previously noted, Local 370 contends its proposed service fee, which is for less than union dues, is outside of the scope of Section 14(b) and cannot be prohibited by Idaho.  (Dkt. 21, p. 18) (quoting *Retail Clerks I*, 373 U.S. at 743.)  The D.C. Circuit rejected this contention in *Int'l Union of Plumbing and Pipefitting*, 675 F.2d at 1262, finding the Supreme Court foreclosed such interpretation of Section 14(b) in *Oil, Chemical & Atomic Workers Int'l Union v. Mobil Oil Corp.*, 426 U.S. 407, 417 (1976).  Although in dicta, the Supreme Court in *Atomic Workers* clarified "Section 14(b) simply mirrors that part of [Section] 8(a)(3) which focuses on [p]ost-hiring conditions of employment.  As its language reflects, [Section] 14(b) was designed to make clear that [Section] 8(a)(3) left the states free to pursue 'their own more restrictive policies in the matter of union-security agreements.'"  *Id*. at 417 (citing *Algoma Plywood Co. v. Wisconsin Bd.*, 336 U.S. 201, 314 (1949)).  Thus, as the Supreme Court stated in *Atomic Workers*, "[w]hile [Section] 8(a)(3) articulates a national policy that certain union security agreements are valid as a matter of federal law, [Section] 14(b) reflects Congress' decision that any State or Territory that wishes to may exempt itself from that policy."  *Id*. at 416-17.

MEMORANDUM DECISION AND ORDER - 23

The *Sweeney* Court also rejected the argument that Section 14(b) permits states to ban only those union security agreements that require "full membership," or full union dues, but does not allow states to ban union security agreements compelling non-members to pay only representation fees.  In so holding, the *Sweeney* Court reviewed Supreme Court precedent holding the "financial core" of union "membership" under Section 8(a)(3) to comprise only the payment of "representation fees," namely, "those fees germane to collective bargaining, contract administration, and grievance adjustment."  767 F.3d at 661 (citing *Gen. Motors*, 373 U.S. at 739 and *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 753-54 (1988)).  "In other words, "[r]epresentation fees—those fees germane to collective bargaining, contract administration, and grievance adjustment—constitute the 'financial core' of membership for the purposes of Section 8(a)(3) and for Section 14(b)."  *Id*.  Therefore, because: (1) "membership" under Section 8(a)(3) and 14(b) should be interpreted consistently; and (2) Section 14(b) allows states to prohibit agreements requiring "membership," then states "necessarily" have the power to "prohibit[] agreements that require employees to pay [r]epresentation fees."  *Id*.  Idaho has chosen to prohibit agreements requiring non-Union members to pay representation fees.  The Court finds it is expressly authorized to do so under Section 14(b).  Consequently, Idaho's right to work law is not preempted by the NLRA.

**5.  Idaho's Right to Work Law Is Not an Unconstitutional Taking**

Local 370 argues that if the Court holds the federal statutory scheme does not preempt Idaho's right to work statute, the statute effectuates an unconstitutional taking because it "'conscript[s] the union into providing uncompensated services to anyone who decides to opt out of union membership.'"  (Dkt. 21, p. 23) (quoting *Sweeney*, 767 F.3d at 683-84 (Wood, J., dissenting)).  Like its preemption argument, the Seventh Circuit addressed and rejected the specific arguments Local 370 raises with respect to its takings claim in *Sweeney*, 767 F.3d at 666.  Although not binding, because the Court finds the reasoning outlined in *Sweeney* persuasive, it will briefly outline and adopt such analysis rather than attempting to reinvent the wheel.

The Takings Clause provides that "private property [shall not] be taken for public use without just compensation."  U.S. Const. amend. V.   Local 370 argues Idaho Code § 44-2003(2) unconstitutionally "takes" its property—in the form of the services its employees provide bargaining and administering the contract for the benefit of the entire bargaining unit (member and nonmember alike)—without just compensation.  (Dkt. 21, pp. 22-23.)  While the parties dispute whether Local 370's services can be considered a "compensable property interest," the Court finds such argument irrelevant because Idaho's law does not effectuate an unconstitutional taking even if the services Local 370 provides can be considered "property" within the meaning of the Constitution.

First, Local 370's alleged deprivation is the product of federal law, which requires the duty of fair representation.  29 U.S.C. § 159(a).  "Because it is *federal* law that provides a duty of fair representation, [Idaho's] right to work statute does not 'take' property from the Union—it merely precludes the Union from collecting fees designed to cover the costs of performing the duty."  *Sweeney*, 767 F.3d at 666 (emphasis in original).  As amici note, "the proper target for Local 370's challenge is the NLRA, which authorizes both the Union's exclusive representation and its concomitant duty of fair representation."  (Dkt. 40, p. 10) (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953) and *Sweeney*, 767 F.3d at 666).  Thus, even if Local 370 could assert a takings claim, the "proper remedy" would be to strike down the federal law imposing on all unions the duty of fair representation, "in right to work states and non-right to work states alike," rather than striking down Idaho's right to work law.  *Sweeney*, 767 F.3d at 666.

Second, Local 370 suggests Idaho Code § 44-2003(3) takes its property by requiring the Union to donate its services to nonmembers for free.  (Dkt. 21, p. 24.) However, as the *Sweeney* Court explained, even if Idaho's right to work law could be said to "take" Local 370's "property," "the union is justly compensated by federal law's grant to the Union the right to bargain exclusively with the employer.  The reason the Union must represent all employees is that the Union alone gets a seat at the negotiation table."  767 F.3d at 666 (citing *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 761 (1961) and Hughes Tool Co., 104 N.L.R.B. 318, 324-25 (1943) ("[A] union could not assess nonmembers for costs arising from contract negotiations for the latter are the

MEMORANDUM DECISION AND ORDER - 26

exclusive duty and prerogative of the certified representative which the nonmember

minority is both entitled to and bound under.")).  As the *Sweeney* Court explained:

> The powers of the bargaining representative are 'comparable to those possessed by
> a legislative body both to create and restrict the rights of those whom it
> represents.'  The duty of fair representation is therefore a 'corresponding duty'
> imposed in exchange for the powers granted to the Union as an exclusive
> representative.  It seems disingenuous not to recognize that the Union's position as
> a sole representative comes with a set of powers and benefits as well as
> responsibilities and duties.

*Id.* (quoting *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944)).

Because Local 370 is "fully and adequately compensated by its rights as the sole

and exclusive member at the negotiating table," Local 370 fails to state a Fifth

Amendment claim.  *Id.*

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1.   Defendant's Motion to Dismiss FAC (Dkt. 16) is **GRANTED**.  This case is

dismissed in its entirety, with prejudice.

2.  Defendant's Motion to Dismiss Complaint (Dkt. 11) is **MOOT** and is therefore

**DENIED**.

DATED: October 24, 2016

Edward J. Lodge
United States District Judge

MEMORANDUM DECISION AND ORDER - 27